UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JEAN SEXTON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 3:11-CV-494 CAN |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
|  | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. |  |  |

**OPINION AND ORDER**

On December 22, 2011, Plaintiff Jean Sexton ("Sexton") filed her complaint with this Court. On May 1, 2012, Sexton filed her opening brief asking this Court to enter judgment in her favor or remand this matter to the Commissioner. On August 2, 2012, Defendant Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief. Thompson filed a reply brief on August 21, 2012. This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

**I.    PROCEDURE**

On September 28, 2007, Sexton filed her application for Title II disability insurance benefits pursuant to 42 U.S.C. § 423, alleging disability beginning July 18, 2007. Her claims were initially denied on January 20, 2008, and also upon reconsideration on May 19, 2008. Sexton appeared via television on June 16, 2010, for a hearing before an administrative law judge ("ALJ").

On June 27, 2010, the ALJ issued a decision determining that Sexton was not disabled. The ALJ found that Sexton met the insured status requirements of the Social Security Act

through her last insured date of June 30, 2010; that she had not engaged in substantial gainful activity from her alleged onset date of July 18, 2007 through her date of last insured of June 20, 2010; and that, through her date of last insured, she was unable to perform any past relevant work. Additionally, the ALJ determined that she suffered from three severe physical impairments: status post left total hip replacement, degenerative disc disease of the lumbar spine, and hypothyroidism. The ALJ also determined that Sexton suffered from three non-severe mental impairments: anxiety, depression, and obsessive-compulsive disorders. Nevertheless, the ALJ determined that Sexton's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also found that Sexton retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), and that she can: lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk 6 hours each per 8 hour period; occasionally stoop, kneel, crouch, crawl and climb stairs; and can never climb ladders, ropes, or scaffolding or work at unprotected heights. Furthermore, the ALJ found that, although Sexton is unable to perform her past relevant work, there are jobs that exist in significant numbers in the national economy that Sexton can perform.

On October 7, 2011, the Appeals Council denied Sexton's request for review of the ALJ's decision, thus making it the Commissioner's final decision. *See* 20 C.F.R. § 404.981; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Sexton filed a complaint in this Court on December 22, 2011, seeking review of the ALJ's decision. For the reasons stated below, the Court grants Sexton's motion to remand.

## II. ANALYSIS

### A. Facts

Sexton was a fifty year old female at her alleged onset date of disability. She has a high school education and is able to communicate in English. Although Sexton raised an issue pertaining to her physical impairments, this issue was raised in a portion of the brief that does not comply with N.D. Ind. L.R. 7-3(d). Therefore, the factual background of Sexton's physical impairments will not be presented here.

#### 1. Sexton's Hearing Testimony

At her hearing, Sexton testified that she weighed 160 pounds and was five feet two inches tall but her right leg was measurably shorter than her left. She further testified that she experienced depression and pain in her lower legs, hip, and back caused by a hip replacement in 2005. She stated that this pain caused her to stop working in 2007. She testified that pain injections relieved the pain, but that relief was not permanent. Sexton stated that she was no longer able to receive injections due to lack of finances and health insurance. She also stated that the pain, even with medication, was at a level of seven on a 10-point scale. With regard to her depression, Sexton stated that she had crying spells and attended counseling until she lost her insurance. She also stated that she was able to drive and perform basic chores.

#### 2. Sexton's Mental Impairments

On October 23, 2007, Sexton met with Dr. Stephen Sauer, her treating physician, seeking treatment for severe depression, anxiety, and chronic pain. Dr. Sauer had been seeing Sexton for panic attacks, depression, and anxiety since 2005. Dr. Sauer opined that Sexton, "at this stage of her life, . . . has . . . become an emotional cripple and will likely fail just about any type of

3

employment for multiple pain/emotional reasons." (Tr. 26, 421).

In October 2007, Dr. Babcock performed a consultative psychological examination of Sexton. Dr. Babcock reported that Sexton encountered a single episode of major depression and an unspecified mild anxiety disorder, and assigned her a GAF of 62, indicating mild symptoms.[1] Dr. Babcock also diagnosed Sexton with a depressive disorder and anxiety, but noted that Sexton's activities only appeared "to be mildly compromised" by these disorders. (Tr. 411).

In December 2007, Sexton underwent a psychiatric review by Dr. Neville with Disability Determination Services ("DDS"). The review determined that, although Sexton's complaints seemed credible, she did not have a severe mental impairment. Neville specifically cited Dr. Babcock's evaluation, as well as the lack of medical opinions regarding Sexton's mental limitations, in determining that Sexton did not suffer from a severe mental disorder.

Sexton also met with consultative mental examiner Dr. Heroldt on April 23, 2008. In Dr. Heroldt's report, he noted that Sexton had a major, recurrent depressive disorder, panic disorder, and obsessive compulsive disorder. He noted that Sexton's memory was below average and that she was not capable of managing her own funds. He assigned Sexton a GAF score of 50, indicating a serious mental impairment.

In August 2008, Sexton met with Four County Counseling Center therapist Amy Miller, who noted that Sexton suffered from a depressive disorder. Ms. Miller's report also noted that Sexton had moderate difficulties in activities of daily living, marked limitation of social functioning, mild limitation in concentration, persistence, or pace, and three episodes of

---

[1] The Global Assessment of Functioning scale rates a "clinician's judgment of the individual's overall level of functioning" on a scale of 0 to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., Text Revision, 32, 34 (2000).

decompensation. Ms. Miller identified Sexton's GAF rating on that date to be 51, indicating moderate occupational functioning, but noted that it has been as high as 69 in the last twelve months.

  **B. Standard of Review**

In reviewing disability decisions of the Commissioner of Social Security, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and based on the proper legal criteria. 42 U.S.C. § 405(g); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny the benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). A reviewing court may not substitute its own opinion for that of the ALJ's or re-weigh evidence; however, "the ALJ must build a logical bridge from the evidence" to his conclusion. *Haynes*, 416 F.3d at 626. The ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

A claimant must establish that she is disabled to be eligible for disability insurance benefits. 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As set forth in the Social Security Regulations, a five-step sequential evaluation process is used to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider whether: (1) the claimant is presently employed at a substantial gainful level; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairments meet or equal any impairment listed in the regulations; (4) the claimant is able to perform her past relevant work given her RFC; and (5) the claimant can adjust to other work in light of her RFC given her age, education, and experience. *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either Step Three or Five. *Briscoe*, 425 F.3d at 351–52. If the impairment or impairments fail to meet or equal a severe impairment listed by the Social Security Regulations at Step Three, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). "The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young*, 362 F.3d at 1000. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record, including impairments determined to be non-severe. *Id.* at 1001; 20 C.F.R. § 404.1545(a)(1)–(3). At Step Four, the claimant must show that, based on her RFC, she is unable to perform any past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is unable to perform past relevant work, the ALJ will consider whether the claimant's RFC prevents her from performing other substantial gainful employment. *Id.* at § 404.1520(g). If the claimant can perform such employment under Step Five, she is considered not to be disabled. *Id.* The claimant bears the burden of proving Steps One through Four, whereas the burden at Step Five is

on the Commissioner. *Young*, 362 F.3d at 1000.

## C. Issues for Review

The issue before this Court is whether the ALJ properly considered Sexton's mental impairments in making its severity and RFC determinations, and whether the ALJ properly considered Sexton's credibility with regard to her allegations of chronic pain. Sexton's brief also appears to propose a third issue; however, her oversized brief does not comply with N.D. Ind. L.R. 7-3(d). Sexton's third issue begins on page 25, and provides only the rule of law pertaining to the issue. Because Sexton was unable to fully develop her argument within the 25 pages allotted and she did not seek leave of court to file an oversized brief, the Court will not address her third issue. The Court will first discuss the ALJ's severity and RFC determinations as challenged by the claimant.

Sexton contends that the ALJ did not properly consider Sexton's mental impairments, and that such failure prejudiced Sexton's case. Specifically, Sexton alleges that the ALJ failed to perform the "special technique" necessary for evaluating the severity of mental impairments. Additionally, Sexton argues that the ALJ did not properly consider Sexton's mental impairments in determining her mental RFC.

The special technique that Sexton references is 20 C.F.R. § 404.1520a, which is used to evaluate mental impairments. This technique must be used at Step Two of the five step sequential evaluation process to determine whether a claimant's mental impairments, or combination of impairments, is severe. This technique requires the ALJ to assess the impairments in four work-related functions: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §

404.1520a(c)(3).  This technique is used to rate the degree of functional limitations caused by mental impairments, as well as their severity.  *Id.* at § 404.1520a(d).  The ALJ rates a claimant's limitation in the first three categories as none, mild, moderate, marked, or extreme, and then notes the number of claimant's episodes of decompensation.  *Id*. at § 404.1520a(c)(4).  If there are no episodes of decompensation, and it is determined that the claimant's ranking in the first three categories is none or mild, the impairment is generally not considered severe.  *Id.* at § 404.1520a(d)(1).

If a mental impairment is determined to be severe, the ALJ continues to Steps Three through Five of the standard five-step analysis.  *Id.* at § 404.1520a(d)(2).  This technique must be performed at every stage of the administrative proceedings.  *Id.* at § 404.1520a(e).  The ALJ must incorporate the pertinent findings and conclusions based on the technique into his decision.  *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008).

The ALJ determined that Sexton suffers from non-severe mental impairments, such as anxiety, depression, and obsessive-compulsive disorders, that minimally affect Sexton's ability to perform basic work functions.  However, the ALJ failed to properly perform the special technique at Step Two.  Instead of assessing the severity of Sexton's mental impairments in the four aforementioned work-related functions, the ALJ solely relied on the general conclusions of DDS psychiatric reviewer Dr. Neville and consultative mental status examiner Dr. Babcock that Sexton did not have a severe mental impairment.  While Dr. Neville completed the special technique in his psychiatric review of Sexton in December 2007, the ALJ failed to incorporate the pertinent findings and conclusions based on the technique into his decision, as is required.  The ALJ also failed to address the notes of other doctors and sources that provided findings

contrary to those of Dr. Neville and Dr. Babcock.  For example, the ALJ mentioned that Dr. Babcock assigned Sexton a GAF of 62, yet failed to mention that consultative mental examiner Dr. Heroldt assigned Sexton a GAF score of 50 several months later.  Additionally, at this step, the ALJ also failed to note the opinion of Sexton's treating physician Dr. Sauer, who opined that Sexton's mental condition would cause her to "fail just about any type of employment for multiple pain/emotional reasons."  (Tr. 26, 421).

The Commissioner cites Sixth Circuit precedent in arguing that the failure to identify a mental impairment as severe at Step Two is harmless error so long as the ALJ identifies other severe impairments and considers the medical and non-medical evidence of the entire record in making its RFC assessment.  *See Maziarz v. Sec'y of Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987).  However, the Seventh Circuit has held that an "RFC analysis is no substitute for the special technique," and that the failure to use the special technique to evaluate the severity of mental impairments is not harmless, even if the ALJ identified other existing severe impairments.  *Craft*, 539 F.3d at 675.  Furthermore, the Seventh Circuit has held that failing to use the special technique to evaluate the severity of a claimant's mental impairments at Step Two is cause for remand because such failure can result in a flawed analysis of a claimant's mental RFC.  *Id.*  Therefore, because the ALJ failed to properly use the special technique to evaluate the severity of Sexton's mental impairments at Step Two, this case must be remanded.

However, even if the ALJ's failure to use the special technique at Step Two was harmless error, as the Commissioner argues, the ALJ still failed to provide proper analysis in articulating Sexton's mental RFC determination.  An ALJ must "sufficiently articulate [his] assessment of the evidence to assure [the Court] that [he] considered the important evidence and . . . to enable

9

[the Court] to trace the path of [his] reasoning." *Hickman v. Apfel*, 197 F.3d 683, 689 (7th Cir. 1999); *see also Craft*, 539 F.3d at 676–77. In assessing a claimant's RFC, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford a claimant meaningful review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (*quoting Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Here, the ALJ's evaluation of Sexton's mental RFC fell short and the ALJ failed to accurately connect the evidence to his conclusion.

In making its mental RFC determination, the ALJ gave little weight to the opinions of Dr. Sauer, Dr. Heroldt, and Amy Miller, but did little more than repeat that "[t]he [ALJ] finds that this opinion is not consistent with the above [RFC] assessment, the objective medical evidence, and the record as a whole." (Tr. 25-26). However, the ALJ never directly addressed specific contradictory evidence. The ALJ relied on the above statement alone in explaining why he gave little weight to consultative examiner Dr. Heroldt's opinion that Sexton's depression caused serious social or occupational impairment. With regard to treating physician Dr. Sauer's determination that Sexton was an emotional cripple, the ALJ simply stated that his evaluation was conclusory and carried little weight. Furthermore, in addressing therapist Amy Miller's evaluation of Sexton, in which she applied the special technique and determined that Sexton suffered from severe mental impairments, the ALJ simply stated that Ms. Miller's notes were not consistent with the record. The ALJ also noted that Ms. Miller, as a therapist, was not an acceptable medical source. However, SSR 06-3p, which specifically addresses the consideration of opinions from sources other than licensed physicians and psychologists, states that, although a therapist "cannot establish the existence of a medically determinable impairment," they may be

used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."

The Commissioner's response brief attempts to thoroughly explain the logic of the ALJ's determination; but unfortunately it is the ALJ, not the Commissioner, who must articulate such logic. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Greater analysis on the part of the ALJ is necessary to ensure a full and fair review of the evidence. On remand, the ALJ must assess the severity of Sexton's mental impairments by incorporating the "special technique" into his decision. Additionally, the ALJ must thoroughly articulate the logic encompassing his determination of Sexton's mental RFC.

Sexton also argues that the ALJ, in determining her RFC, improperly considered her credibility regarding her allegations of chronic pain. More specifically, Sexton argues that, amongst other things, the ALJ ignored the possibility that her pain had a psychological component. The assessment of a claimant's RFC "depends at least in part on the credibility of the claimant's testimony regarding the intensity of her symptoms." *Smith v. Astrue*, 467 Fed. Appx. 507, 511 (7th Cir. 2012); *see also Bjornson v. Astrue*, 671 F.3d 640, 645–46 (7th Cir 2012). In making a RFC determination, an ALJ's improper consideration of a claimant's impairments can detrimentally affect its credibility determination. *See Villano v. Astrue*, 556 F.3d 558, 562–63 (7th Cir. 2009).

Here, the ALJ found that Sexton's mental impairments were non-severe. The ALJ specifically noted that while Sexton's physical and mental impairments "could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible[.]" (Tr. 22). However, had

the ALJ determined that Sexton's mental impairments were severe, the ALJ may have also found Sexton's statements regarding the intensity and limiting effects of her impairments, such as her allegations of chronic pain, to be credible. If Sexton is correct in her argument that her chronic pain has a psychological component, then the ALJ's improper analysis of the severity of her mental impairments possibly had an adverse effect on its ultimate credibility determination. A proper assessment of Sexton's credibility cannot be made until the ALJ properly determines whether Sexton suffers from a severe mental impairment. Because such a determination cannot be made until the ALJ properly applies the special technique at Step Two, this Court will not address the issue of whether the ALJ properly considered Sexton's credibility with regard to her allegations of chronic pain.

### III. CONCLUSION

The ALJ's determination regarding the severity of Sexton's mental impairments is not sufficiently articulated nor supported by substantial evidence. Additionally, the ALJ's mental RFC determination is not supported by substantial evidence. Therefore, this court **GRANTS** Sexton's motion to **REMAND**.

**SO ORDERED.**

Dated this 18th day of April, 2013.

                                                  s/Christopher A Nuechterlein
                                                  Christopher A. Nuechterlein
                                                  United States Magistrate Judge